Daniel J. Wadley (10358)
Wadleyd@sec.gov
Karen L. Martinez (7914)
Martinezk@sec.gov
Attorneys for Plaintiff
Securities & Exchange Commission
15 West South Temple, Suite 1800
Salt Lake City, Utah 84101
Telephone:  801-524-5796
Facsimile: 801-524-5262

## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>PLAINTIFF,<br><br>v.<br><br>Raymond P. Morris, E & R Holdings, LLC, Wise Financial Holdings, LLC, Momentum Leasing, LLC, James L. Haley, Cornerstone Capital Fund, LLC, Vantage Point Capital, LLC, Jay J. Linford, Freedom Group, LLC, and Luc D. Nguyen,<br><br>DEFENDANTS. | **COMPLAINT**<br><br><br>Civil No.: _____<br><br>Judge: _____ |

Plaintiff, Securities and Exchange Commission (the "Commission"), for its Complaint against Defendants alleges as follows:

### INTRODUCTION

1.      This matter involves an offering fraud that bilked at least 90 investors out of no less than $60 million. From at least March 2007 through January 2009, Raymond P. Morris ("Morris"), through his entities E & R Holdings, LLC, Wise Financial, LLC, and Momentum Leasing, LLC, offered and sold unregistered and non-exempt promissory notes to investors by

making misrepresentations and omissions designed to convince investors that that they were purchasing high-yield notes that were free of risk.

2.      Morris told investors he was raising capital for an exclusive investment fund based on a "capital leasing concept" (the "Fund").  Morris advised investors that their principal would be deposited into a secure account that he had sole control over and that investment funds would never leave this account.

3.      Morris told investors that their principal would only be used for "verification of deposit" purposes by certain private traders.  Morris further told investors these private traders would obtain large lines of credit and invest the proceeds in ways that would generate a guaranteed 20% per month interest rate.

4.      In reality, Morris used investor money for personal expenses, including a luxurious home and several sports cars, and for making Ponzi payments to create an illusion of a successful investment.

5.      Morris did not act alone.  James L. Haley ("Haley"), through his entities Cornerstone Capital Fund, LLC and Vantage Point Capital, LLC, solicited investment money for Morris's Fund through misrepresentations and by recklessly repeating Morris's misrepresentations to investors.

6.      Jay J. Linford ("Linford"), through his entity Freedom Group, LLC, also solicited investment money for Morris's Fund by making misrepresentations and by recklessly passing on Morris's misrepresentations to investors.

7.      Luc D. Nguyen ("Nguyen"), an attorney hired by Morris and Haley, solicited investment money for Morris's Fund by misrepresenting the nature of the Fund and by repeating Morris's misrepresentations to investors without performing reasonable due diligence.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction by authority of Sections 20 and 22 of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. §§ 77t and 77v] and Sections 21 and Section 27 of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. §§ 78u and 78aa].

9.      Defendants, directly and indirectly, singly and in concert, have made use of the means and instrumentalities of interstate commerce and the mails in connection with the transactions, acts and courses of business alleged herein, certain of which have occurred within the District of Utah.

10.     Venue for this action is proper in the District of Utah under Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and under Section 27 of the Exchange Act [15 U.S.C. § 78aa] because certain of the transactions, acts, practices, and courses of business alleged in this Complaint took place in this district and because certain of the defendants reside in and transact business in this district.

11.     Defendants, unless restrained and enjoined by this Court, will continue to engage in the transactions, acts, practices, and course of business alleged herein and in transactions, acts, practices, and courses of business of similar purport and object.

12.     Defendants' conduct took place in connection with the offer, purchase and/or sale of securities in the form of promissory notes.

## DEFENDANTS

13.     **Raymond P. Morris** ("Morris"), age 42, is a Utah resident living in Draper, Utah. Morris is the sole owner of E & R Holdings, Wise Financial, and Momentum.  Morris has never

been registered with the Commission in any capacity and has never been licensed to sell securities.

14.     **E & R Holdings, LLC** ("E & R Holdings") is a Utah limited liability company, formed in 2007, and owned and operated by Morris.  Morris solicited investors for E & R Holdings from about March 2007 until July 2007.  E & R Holdings has not registered any offering of its securities under the Securities Act or a class of securities under the Exchange Act.

15.     **Wise Financial Holdings, LLC** ("Wise Financial") is a Utah limited liability company, formed in June 2007, and owned and operated by Morris.  Morris solicited investors for Wise Financial from about August 2007 through September 2008.  Wise Financial has not registered any offering of its securities under the Securities Act or a class of securities under the Exchange Act.

16.     **Momentum Leasing, LLC** ("Momentum") is a Utah limited liability company, formed in July 2007, and owned and operated by Morris.  Morris solicited investors for Wise Financial from about July 2007 through January 2008.  Momentum has not registered any offering of its securities under the Securities Act or a class of securities under the Exchange Act.

17.     **James L. Haley** ("Haley") age 49, is a Utah resident living in Draper, Utah. Haley is the sole owner of Cornerstone Capital Fund and Vantage Point Capital. Haley has never been registered with the Commission in any capacity and has never been licensed to sell securities.

18.     **Cornerstone Capital Fund, LLC** ("Cornerstone Capital") is a Utah limited liability company, formed in April 2007, and owned and operated by Haley. Haley solicited investors for Cornerstone Capital from about August 2007 until June 2008.  Cornerstone Capital

has not registered any offering of its securities under the Securities Act or a class of securities under the Exchange Act.

19.     **Vantage Point Capital, LLC** ("Vantage Point") is a Utah limited liability company, formed in July 2007, and owned and operated by Haley.  Haley solicited investors for Vantage Point from about August 2007 until June 2008.  Vantage Point has not registered any offering of its securities under the Securities Act or a class of securities under the Exchange Act.

20.     **Luc D. Nguyen,** ("Nguyen"), age 40, is a Utah resident living in Draper, Utah. Nguyen is a member of the Utah State Bar and was counsel to Morris and Haley at all times relevant to this Complaint. Nguyen has never held any securities licenses and is not registered with the Commission in any capacity.

21.     **Jay J. Linford** ("Linford"), age 49, is a Utah resident living in Orem, Utah. Linford is the sole owner of Freedom Group.  Linford has never been registered with the Commission in any capacity and has never been licensed to sell securities.

22.     **Freedom Group, LLC** ("Freedom Group") is a Utah limited liability company, formed in October 2007, and owned and operated by Linford. Linford solicited investors for Freedom Group from about August 2008 until March 2009.  Freedom Group has not registered any offering of its securities under the Securities Act or a class of securities under the Exchange Act.

## FACTS

### Background

23.     From at least March 2007 until January 2009, Morris offered and sold securities in the form of promissory notes to over 90 investors in unregistered, non-exempt transactions that raised at least $60 million.

24.     Although Morris told investors their principal would be deposited in a secure account and only would be used to verify deposits, Morris removed investor money and used it to support his extravagant lifestyle and to make Ponzi payments to some investors.  Morris was assisted by Haley, Nguyen and Linford, who raised capital for Morris by making material misrepresentations to investors.

25.     Morris began operating his Ponzi scheme in about March 2007.  Sometime prior to March 2007, Morris approached Haley, who was a member of a real estate investment group to which Morris also belonged.

26.      Morris advised Haley that he had come across an exclusive investment opportunity that was based on a capital leasing concept.  Morris told Haley the Fund was started by the owner of the Houston Astros and had generated 20% returns per month for about eight years.

27.     Morris further told Haley that once money was invested in the Fund, it would be deposited into an account under Morris's sole control and would never leave the account.

28.      Morris explained to Haley that once investor capital was verified, private traders would obtain large lines of credit and then would invest the proceeds in bonds, hard money lending and small businesses.  Morris advised Haley that the return from these investments would be sufficient to guarantee investors a return of 20% per month or more.

29.     Morris told Haley they could not join the Fund unless an existing investor died.

30.     Less than a week after introducing the Fund to Haley, Morris called Haley with news that one of the Fund's investors had died.  Morris indicated that if Haley could raise $500,000 in three to five days, they could invest in the Fund.

31.     Without conducting any due diligence into Morris or the Fund, Haley began soliciting investments from friends and neighbors and raised $500,000, which he gave to Morris.

32.     In obtaining these funds, Haley simply repeated Morris's statements that the Fund had an eight-year history of paying investors at least 20% per month and that investor funds would be safely held in an account and only used for "verification of deposit" purposes.

33.     Morris and Haley had an oral agreement that Haley would receive 20% per month on funds he raised and Haley could determine what portion of this he gave back to his investors.

34.     From about August 2007 through June 2008, Haley, through his entities Cornerstone Capital and Vantage Point, raised at least $20 million for Morris's Fund.  In soliciting investments, Haley repeated Morris's misrepresentations to investors and made additional misrepresentations, including that he was the sole owner of the Fund.

35.     Sometime prior to June 2007, Morris and Haley hired Nguyen, a Utah attorney, to assist them with legal matters relating to soliciting investments.  Nguyen set up Morris's and Haley's investment entities, drafted offering documents, and filed Forms D with the Commission for Morris controlled entities, E & R Holdings, Wise Financial and Momentum, and for Haley controlled entities, Cornerstone Capital and Vantage Point.

36.     After setting up the investment entities, Nguyen stepped outside his role as counsel and began soliciting investments.  Despite having conducted no due diligence on Morris or the Fund, Nguyen recklessly repeated Morris's misrepresentations about the Fund to investors.

37.     Nguyen also knowingly made additional false representations to investors, including that he had reviewed the Fund's documents and had personally spoken with the banks and private traders involved.  Nguyen touted the Fund as "one of the best he had ever seen" and told investors he "understood the Fund better than Morris or Haley."

38.     Nguyen also falsely told investors that he personally had significant assets invested in the Fund.  In fact, Nguyen made no capital contributions to the Fund.

39.     Nguyen was paid at least $330,000 from Morris for raising investment funds and was paid at least an additional $58,000 in legal fees.

40.     Sometime during the Spring of 2007, Morris met Linford at an investment seminar of "100X," an investment group to which they both belonged.

41.     Linford fraudulently raised about $1 million for the Fund by misrepresenting that the Fund paid returns as high as 100% in seven days with no risk to investor principal.

42.     Many of the investors who lost money in the Fund were inexperienced, unsophisticated and had minimal net worth and annual income.  Many investors lost their entire savings to Morris's Fund and some borrowed the money they invested and are now indebted beyond their ability to repay their lenders.  None of the Defendants gave investors financial statements or material financial information about the Fund.

**<u>Morris's Misrepresentations to Investors</u>**

43.     Morris convinced investors to purchase promissory notes from his entities, E & R Holdings, Wise Financial and Momentum, through oral and written misrepresentations and omissions.

44.     Morris orally assured investors their principal would be used only for "verification of deposit" purposes and would not leave a secure account that only Morris had access to.

45.     Morris further advised investors that high returns of 20% per month or more would be generated by allowing private traders to verify the deposited funds and obtain lines of credit to invest in various ways.

46.     Morris told investors he had joint venture partners that understood this "leased capital" concept.

47.     Morris orally assured investors that their investment was free of risk.

48.     The oral representations Morris made to investors were false.  In reality, Morris did not work with private traders to obtain lines of credit that were invested.  Rather, Morris used investor funds to support his luxurious lifestyle, and to make bogus interest payments to earlier investors from capital raised from later investors.

49.     Morris also knew his oral representations regarding the lack of risk his investors faced were false.  Investors faced real risk in investing with Morris, since Morris was using investor funds to pay his personal expenses and to operate a Ponzi scheme.

50.     In addition to these oral misrepresentations, Morris gave investors a Private Placement Memorandum ("PPM") for E & R Holdings, Wise Financial or Momentum, depending on which entity was providing the promissory note. These PPMs contained material misrepresentations regarding how Morris would use investor money.

51.     The PPM for E & R Holdings states that it was formed to "engage in the business of investing, owning, holding, or trading in various traditional and alternative private debt and equity investment vehicles; real estate; and direct and indirect investment in commodities; and to engage in the business of providing real estate financing and private lending."

52.     The PPM for Wise Financial states that is was in the business of "investing, owning, holding, or trading real estate…providing real estate financing and private lending; and provid(ing) private debt capital to businesses."

53.     The PPM for Momentum states that it was formed to "engage in the business of leasing funds to establish international and domestic private trade institutions for verification of

deposit purposes." It further states that when the leased funds are verified, that "private traders are able to increase or obtain lines of credit with established institutional lenders for various business uses," including "trade credit, bridge loans, hard-money loans and high-rated bonds." This PPM further explains that private traders may also "conduct commodities and day trading activities" and that Momentum conducts business through joint ventures with partners that "have long-standing relationships with established private traders."

54.     The representations in these PPMs were repeated in the promissory notes that Morris gave to investors. These promissory notes state that they are "issued under and subject in all respects to the terms of the Company's Private Placement Memorandum."

55.     In these PPMs and promissory notes, Morris made material misrepresentations to investors and omitted material information regarding how he would use investor money. Rather than investing the funds in debt and equity vehicles, real estate, commodities and leasing it to private traders, Morris used investor money to support a lavish lifestyle, including a luxurious home and several sports cars, and to make illusory interest payments to early investors in his scheme.

56.     Morris never advised investors that their funds would be used to pay Morris's personal expenses or to pay other investors purported returns.

57.     Morris's misrepresentations and omissions were material.

**Haley's Misrepresentations to Investors**

58.     Haley made material oral and written misrepresentations to investors and omitted important information in order to raise approximately $20 million in capital for Morris.

59.     Haley solicited investments by selling promissory notes from his entities, Cornerstone Capital and Vantage Point, and then forwarding most of the investor funds to Morris.

60.     Haley recklessly repeated Morris's misrepresentations to investors, including advising them that their principal would be used only for "verification of deposit" purposes and would not leave a secure account.  Haley told his investors that returns of 12-20% per month would be generated by allowing private traders to use the funds to obtain lines of credit and invest the proceeds.  Haley also falsely advised investors that their investment carried no risk and that the high returns were guaranteed.

61.     In addition to recklessly passing on Morris's misrepresentations to investors, Haley also knowingly made false representations regarding how investor funds would be controlled.  Despite knowing that Morris controlled investor funds, Haley told certain investors that he controlled the Fund and that their money would be safe under his control.

62.     In addition to these oral misrepresentations, Haley gave his investors a PPM for Cornerstone Capital or Vantage Point, depending on which entity was providing the promissory note.  These PPMs and promissory notes contain additional misrepresentations and omissions.

63.     The PPM for Cornerstone Capital states that it was formed to "engage in the business of investing, owning, holding, or trading in various traditional and alternative private debt and equity investment vehicles; real estate; and direct and indirect investment in commodities; and to engage in the business of providing real estate financing and private lending."

64.     The PPM for Vantage Point describes it as being formed to "make a debt capital investment into certain asset leasing companies engaged in the business of leasing funds to

11

established international and domestic private trade institutions for verification of deposit

purposes."

65.     The written representations in these PPMs were repeated in the promissory notes

Haley gave investors on behalf of Cornerstone Capital and Vantage Point.  These notes state that

they "were issued under and subject in all respects to the terms of [the Cornerstone Capital or

Vantage Point] Private Placement Memorandum."

66.     The above oral and written statements are false and omit material information.

Rather than placing investor funds into a secure account to be used for "verification of deposit"

purposes, Haley blindly gave his investors' principal to Morris.  After transferring investor funds

to Morris, Haley had no control over the funds and no ability to determine how Morris was using

the funds.

67.     Haley's representation regarding the lack of risk investors faced was also false,

since investor funds were at great risk of being lost in Morris's Ponzi scheme.

68.     Further, contrary to the representations made in the Cornerstone Captial and

Vantage Point PPMs, Haley did not use investor funds to invest in debt and equity vehicles, real

estate, commodities, or as leased funds for "verification of deposit."  Instead, Haley forwarded

most of his investors' funds to Morris to use at his sole discretion.

69.     In addition to his oral and written misrepresentations, Haley omitted material

information when soliciting investments, including failing to advise investors that he was

keeping a portion of the supposed returns from the Fund as his personal profit, that he did not

control the Fund, that he was using a portion of investor principal for personal use, and that he

had not conducted reasonable due diligence on Morris or the Fund.

70.     Out of the approximate $20 million Haley raised, Haley used at least $700,000 for personal expenses, including payments on a new home and $25,000 per month rental payments while building this new home.

71.     Haley's misrepresentations and omissions were material.

**Nguyen's Misrepresentations to Investors**

72.     Morris and Haley often referred prospective investors to Nguyen to convince them the Fund was legitimate.  In attempting to raise money for the Fund, Nguyen knowingly and recklessly made several misrepresentations about the Fund.

73.     Nguyen conducted no due diligence on Morris or the Fund.

74.     Nguyen falsely told investors their principal would be used only for "verification of deposit" purposes and would not leave a secure account.  Nguyen also assured investors that they would receive up to 20% per month interest, which would be generated by private traders who would obtain lines of credit and invest the proceeds.

75.     Nguyen represented to investors that their principal would be safe and essentially risk-free.

76.     Nguyen told investors that he was an "SEC attorney" and that the Fund was "one of the best he had ever seen."  Nguyen also falsely told investors that he had done extensive due diligence into Morris's Fund and knew the program better than Morris or Haley.

77.     Nguyen knowingly made misrepresentations to investors regarding his due diligence.  Nguyen told investors he had personally met with the attorneys representing the supposed trading companies involved in the Fund and that he had received copies of all operating agreements between the leasing companies and the trading companies.  In fact, Nguyen performed no due diligence on Morris or the Fund, never met with anyone affiliated

with the Fund or a leasing company or trading company involved with the Fund and never received any documents associated with the Fund.

78.     Nguyen's representations regarding the lack of risk investors faced were also false.  In truth, investors faced real risk of losing their principal to Morris and his Ponzi scheme.

79.     Nguyen's misrepresentations and omissions were material.

## Linford's Misrepresentations to Investors

80.     Linford made material oral and written misrepresentations to investors and omitted material information in order to raise approximately $1 million for Morris.  Linford solicited investments by selling promissory notes from his entity, Freedom Group.

81.     Linford recklessly passed on Morris's misrepresentations to investors.  Linford told investors their funds would be placed into a secure account where they could not be removed.  Linford told investors their principal would be used for "verification of deposit" purposes, as part of a government incentive deal.

82.     Linford also knowingly misrepresented to some investors that he controlled the secure account where their funds would be held.

83.     Contrary to what Linford told investors about their funds being secure, the wiring instructions he gave investors were instructions to deposit funds into an account Morris controlled.  Linford had no authority to verify what was being done with investor funds once they were deposited into Morris's account.

84.     Linford conducted no due diligence into Morris or the Fund and had no reasonable basis for believing Morris's representations or passing them on to investors.

85.     Linford's misrepresentations and omissions were material.

86.     In connection with these misrepresentations and his participation in the scheme, Linford either directly or through his entities received not less than $13 million from Morris and the Morris-controlled entities.

**The Ponzi Scheme Unravels**

87.     In April 2008, Morris stopped making regular interest payments to investors. Morris gave many explanations to investors, including that Homeland Security had frozen the accounts, that the Madoff case had caused banks to hold funds and that typographical errors in wire request forms had caused delays.

88.     Morris told Haley, Nguyen and Linford to pass these explanations on to investors, and they did so without questioning Morris or conducting due diligence on Morris or the Fund.

89.     As investors complained and threatened to go to the Commission and other government agencies, Morris began disseminating phony bank statements falsely showing that he had over $200 million deposited with Wachovia Bank.  In late October 2008, Morris gave Nguyen a purported "Bank Confirmation Letter" from Wachovia.

90.     This fraudulent letter states that Wachovia "currently holds funds in the amount of…$201,782,567.89…[and] Mr. Raymond Paul Morris is the signatory on this account."  The letter also says "the funds are good, clean and of non-criminal origin, are unencumbered and freely disposable."

91.     In addition to this letter, Morris gave Nguyen a phony "Verification of Depository," also purporting to be from Wachovia Bank, showing that $201,827,067.89 was in Morris's account.

92.     After Nguyen received the bogus "Bank Confirmation Letter" and "Verification of Depository," he agreed to draft a letter to Morris's investors, assuring them their funds were

safe.  Nguyen's October 30, 2008 letter states that "Mr. Morris is in possession of funds that will allow for the return of the principal amount of your investment along with any back interest in the anticipated redemption of your Promissory Notes(s)."

93.     This letter further confirmed that Nguyen was "in possession of a copy of an official bank letter confirming that the funds are in a specified account under Mr. Morris [sic] signatory control at such bank."

94.     Nguyen did not conduct reasonable due diligence prior to sending this October 30, 2008 letter.  The letter caused investors to delay their attempts to contact government authorities regarding Morris, Haley, Linford and Nguyen and their investment activities.

95.     By the time the Ponzi scheme unraveled, Morris, Haley, Linford and Nguyen, and their respective entities, had defrauded at least 90 investors out of $60 million or more by offering and selling unregistered and non-exempt promissory notes based on material misrepresentations and omissions.

**FIRST CAUSE OF ACTION**
**EMPLOYMENT OF A DEVICE, SCHEME OR ARTIFICE TO DEFRAUD**
**Violation of Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)]**

96.     The Commission realleges and incorporates by reference the allegations contained in the above paragraphs.

97.     Defendants, and each of them, by engaging in conduct described above, directly or indirectly, in the offer or sale of securities, by the use of the means or instruments of transportation or communication in interstate commerce or by use of the mails have employed devices, schemes or artifices to defraud.

98.     By reason of the foregoing, Defendants, and each of them, directly or indirectly, violated, and unless restrained and enjoined by this Court, will continue to violate Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)].

## SECOND CAUSE OF ACTION
### FRAUD IN THE OFFER AND SALE OF SECURITIES
**Violations of Section 17(a)(2) and (3) of the Securities Act
[15 U.S.C. § 77q(a)(2) and (3)]**

99.   The Commission realleges and incorporates by reference the allegations contained in the above paragraphs.

100.   Defendants, and each of them, by engaging in the conduct described above, directly and indirectly, in the offer and sale of securities, by the use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, obtained money or property by means of untrue statements of material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and engaged in transactions, practices, or courses of business which operate or would operate as a fraud or deceit upon the purchaser.

101.   By reason of the foregoing, Defendants, and each of them, directly or indirectly, violated, and unless restrained and enjoined will continue to violate, Section 17(a)(2) and 17(a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(2) and 77q(a)(3)].

## THIRD CAUSE OF ACTION
### FRAUD IN CONNECTION WITH THE PURCHASE AND
### SALE OF SECURITIES
**Violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5
thereunder [17 C.F.R. § 240.10b-5]**

102.   The Commission realleges and incorporates by reference the allegations contained in the above paragraphs.

103.   Defendants, and each of them, by engaging in the conduct described above, directly or indirectly, by the use of means or instrumentalities of interstate commerce or use of the mails, in connection with the purchase or sale of securities, with scienter, (1) employed devices, schemes, or artifices to defraud; (2) made untrue statements of material fact or omitted

to state a material fact necessary in order to make statements made, in light of the circumstances under which they were made not misleading; or (3) engaged in acts, practices, or courses of business that operated or would operate as a fraud and deceit upon other persons.

104.    By reason of the foregoing, Defendants, and each of them, violated, and unless restrained and enjoined will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

**FOURTH CAUSE OF ACTION**
**OFFER AND SALE OF UNREGISTERED SECURITIES**
**Violation of Sections 5(a) and (c) of the Securities Act [15 U.S.C. § 77e(a) and (c)]**

105.    The Commission realleges and incorporates by reference the allegations contained in the above paragraphs.

106.    Defendants, and each of them, by engaging in the conduct described above, directly or indirectly, through use of the means or instruments of transportation or communication in interstate commerce or the mails, offered to sell or sold securities or, directly or indirectly, carried such securities through the mails or in interstate commerce, for the purpose of sale or delivery after sale.

107.    No registration statement has been filed with the Commission or has been in effect with respect to these securities.

108.    By reason of the foregoing, Defendants, directly or indirectly violated, and unless enjoined will continue to violate Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

## FIFTH CAUSE OF ACTION
### OFFER AND SALE OF SECURITIES BY AN
### UNREGISTERED BROKER OR DEALER: Morris, Haley and Nguyen as
### Violating Section 15(a) of the Exchange Act [15 U.S.C. § 78o(a)]

109.   The Commission realleges and incorporates by reference the allegations contained in above paragraphs.

110.   Defendants Morris, Haley and Nguyen, directly or indirectly, made use of the mails or the means or instrumentalities of interstate commerce to effect transactions in, or to induce or attempt to induce the purchase and sale of, securities without being registered as a broker or dealer with the Commission or associated with a broker-dealer registered with the Commission.

111.   By reason of the foregoing, Defendants Morris, Haley and Nguyen violated, and unless restrained and enjoined will continue to violate, Section 15(a) of the Exchange Act [15 U.S.C. 78o(a)].

### RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court:

### I

Issue findings of fact and conclusions of law that the Defendants committed the violations charged herein.

### II

Issue in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure orders that preliminarily and permanently enjoin Defendants Morris, E & R Holdings, Wise Financial, Momentum, Haley, Cornerstone Capital, Vantage Point, Linford, Freedom Group and Nguyen, their officers, agents, servants, employees, attorneys, and accountants, and those persons in active concert or participation with any of them, who receive actual notice of the order by

19

personal service or otherwise, and each of them, from engaging in transactions, acts, practices, and courses of business described herein, and from engaging in conduct of similar purport and object in violation of Sections 5(a), 5(c) and 17(a) of the Securities Act, and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

### III

Issue in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure orders that preliminarily and permanently enjoin, Defendants Morris, Haley and Nguyen, their officers, agents, servants, employees, attorneys, and accountants, and those persons in active concert or participation with any of them, who receive actual notice of the order by personal service or otherwise, and each of them, from engaging in transactions, acts, practices, and courses of business described herein, and from engaging in conduct of similar purport and object in violation of Section 15(a) of the Exchange Act.

### IV

Enter an order directing Defendants, and each of them, to pay civil money penalties pursuant to Section 20(d) of the Securities Act and Section 21(d)(3) of the Exchange Act.

### V

Enter an order directing Defendants to disgorge all ill-gotten gains received during the period of violative conduct and pay prejudgment interest on such ill-gotten gains.

### VI

Grant such further equitable relief as this Court deems just, appropriate and necessary.

### VII

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all

orders and decrees that may be entered, or to entertain any suitable application or motion for

additional relief within the jurisdiction of this Court.

      Dated this 6th day of January, 2011.


                Respectfully submitted,


                /s/ Daniel J. Wadley
                Daniel J. Wadley
                Karen L. Martinez
                Attorneys for Plaintiff
                Securities and Exchange Commission