Thomas M. Melton (4999)
meltont@sec.gov
Daniel J. Wadley (10358)
wadleyd@sec.gov
Attorneys for Plaintiff
Securities and Exchange Commission
15 West South Temple, Suite 1800
Salt Lake City, Utah 84101
Telephone: (801) 524-5796
Facsimile: (801) 524-5262

FILED
U.S. DISTRICT COURT

2012 JUN -4  P 2: 01

DISTRICT OF UTAH

BY:_____
    DEPUTY CLERK

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH
# CENTRAL DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>Raymond P. Morris, E & R Holdings, LLC, Wise Financial Holdings, LLC, Momentum Leasing, LLC, James L. Haley, Cornerstone Capital Fund, LLC, Vantage Point Capital, LLC, Jay J. Linford, Freedom Group, LLC, and Luc D. Nguyen,<br><br>Defendants. | ~~(proposed)~~ **FINAL JUDGMENT AGAINST RAYMOND P. MORRIS**<br><br>**CIVIL NO: 2:11-cv-00021**<br><br>**Judge Bruce S. Jenkins** |

Plaintiff Securities and Exchange Commission (the "Commission") filed a Motion for Summary Judgment against Raymond P. Morris ("Morris" or "Defendant"). Morris did not oppose or otherwise respond to the Commission's Motion for Summary Judgment. The Court held a hearing on August 23, 2012. Having reviewed the Commission's Motion, its Memorandum and exhibits thereto, the Court finds as follows:

## FINDINGS OF FACT

### A.  OVERVIEW

1. This matter involves an offering fraud that bilked investors out of no less than $60 million. From at least March 2007 through January 2009, Raymond P. Morris, through his entities E & R Holdings, LLC ("E & R Holdings"), Wise Financial Holdings, LLC ("Wise Financial"), and Momentum Leasing, LLC ("Momentum") offered and sold unregistered and non-exempt promissory notes to investors by making misrepresentations and omissions designed to convince investors that they were purchasing high-yield notes that were free of risk.

2. Morris told investors he was raising capital for an exclusive investment fund based on a "capital leasing concept." Morris advised investors that their principal would be deposited into a secure account that he had sole control over and that investment funds would never leave this account.

3. Morris told investors that their principal would only be used for "verification of deposit purposes by certain private traders. Morris further told investors these private traders would obtain large lines of credit and invest the proceeds in ways that would generate a guaranteed interest rate of up to 20% per month.

4.  In reality, Morris used investor money for personal expenses, including a luxurious home and several sports cars, for making interest payments to create an illusion of a successful investment; and for other investment purposes where the funds could be and were lost.

**B. DEFENDANT**

7.  Raymond P. Morris, age 43, is a Utah resident. Morris is the sole owner of E & R Holdings, Wise Financial, and Momentum. Morris has never been registered with the Commission in any capacity and has never been licensed to sell securities.

    a.  E & R Holdings, LLC is a Utah limited liability company, formed in 2007, and owned and operated by Morris. Morris solicited investors for E & R Holdings from about March 2007 until July 2007. E & R Holdings has not registered any offering of its securities under the Securities Act of 1933 ("Securities Act") or a class of securities under the Securities Exchange Act of 1934 ("Exchange Act").

    b.  Wise Financial Holdings, LLC is a Utah limited liability company, formed in June 2007, and owned and operated by Morris. Morris solicited investors for Wise Financial from about August 2007 through September 2008. Wise Financial has not registered any offering of its securities under the Securities Act or a class of securities under the Exchange Act.

    c.  Momentum Leasing, LLC is a Utah limited liability company, formed in July 2007, and owned and operated by Morris. Morris solicited investors for Momentum from about July 2007 until at least January 2008. Momentum has not

3

registered any offering of its securities under the Securities Act or a class of securities under the Exchange Act.

### C. THE OFFERING

8. From at least March 2007 until January 2009, Morris offered and sold securities in the form of promissory notes to investors in unregistered, non-exempt transactions that raised at least $60 million.

9. Although Morris told investors their principal would be deposited in a secure account and only would be used to verify deposits, Morris removed investor money and used it to support his extravagant lifestyle, to make interest payments to some investors, and invest in other joint venture opportunities. Morris was assisted by Nguyen and Linford, who raised capital for Morris by making material misrepresentations to investors.

10. Morris began operating his scheme in about March 2007. Sometime prior to March 2007, Morris approached James L. Haley ("Haley"), who was a member of a real estate investment group to which Morris also belonged.

11. Morris advised Haley that he had come across an exclusive investment opportunity that was based on a capital leasing concept. Morris told Haley the Fund was started by the owner of the Houston Astros and had generated 20% returns per month for about eight years.

12. Less than a week after introducing the Fund to Haley, Morris called Haley. Morris indicated that if Haley could raise $500,000 in three to five days, they could invest in the Fund. Without conducting any due diligence into Morris or the Fund, Haley

began soliciting investments from friends and neighbors and raised $500,000, which he gave to Morris.

13.     From about August 2007 through June 2008, Haley, through his entities Cornerstone Capital Fund, LLC ("Cornerstone Capital") and Vantage Point Capital, LLC ("Vantage Point"), raised at least $20 million for Morris' Fund. In soliciting investments, Haley repeated Morris' misrepresentations to investors.

14.     Sometime in the summer of 2007, Morris hired Luc D. Nguyen ("Nguyen"), a Utah attorney, to assist him with legal matters relating to soliciting investments. Nguyen set up Morris' investment entities, drafted offering documents, and filed Forms D with the Commission for Morris controlled entities, E & R Holdings, Wise Financial and Momentum.

15.     Sometime during 2007, Morris met Jay J. Linford ("Linford"), who began to help solicit investments for the Fund repeating Morris' misrepresentations and making misrepresentations of his own, including that the Fund paid returns as high as 100% in seven days with no risk to investor principal.

16.     Many of the investors who lost money in the Fund were inexperienced, unsophisticated, and had minimal net worth and annual income. Many investors lost their entire savings to Morris' Fund and some borrowed the money they invested and are now indebted beyond their ability to repay their lenders. None of the Defendants gave investors financial statements or material financial information about the Fund.

D.     **MORRIS' MISREPRESENTATIONS TO INVESTORS**

17.     Morris convinced investors to purchase promissory notes from his entities, E & R Holdings, Wise Financial, and Momentum, through oral and written misrepresentations

5

and omissions. Morris orally assured investors their principal would be used only for "verification of deposit" purposes and would not leave a secure account to which only Morris had access.

18. Morris further advised investors that high returns of 20% per month or more would be generated by allowing private traders to verify the deposited funds and obtain lines of credit to invest in various ways.

19. Morris told investors he had joint venture partners that understood this "leased capital" concept.

20. Morris orally assured investors that their investment was free of risk.

21. The oral representations Morris made to investors were false. In reality, Morris did not work with private traders to obtain lines of credit that were invested. Rather, Morris used investor funds to support his luxurious lifestyle and to repay earlier investors.

22. Morris also knew his oral representations regarding the lack of risk his investors faced were false. Investors faced real risk in investing with Morris, since Morris was using investor funds to pay his personal expenses repay earlier investors and to invest in joint venture opportunities where investor funds could be and were lost.

23. In addition to these oral misrepresentations, Morris gave investors a Private Placement Memorandum ("PPM") for E & R Holdings, Wise Financial, or Momentum, depending on which entity was providing the promissory note.

24. The PPM for E & R Holdings states that it was formed to "engage in the business of investing, owning, holding, or trading in various traditional and alternative private debt and equity investment vehicles; real estate; and direct and indirect investment in

commodities; and to engage in the business of providing real estate financing and private lending."

25. The PPM for Wise Financial states that it was in the business of "lending funds ('Leased Funds') to established international and domestic private trade institutions ('Private Traders') who in turn leverage the Leased Funds solely for the purpose of acquiring lines of credit"

26. The PPM for Momentum states that it was formed to "engage in the business of leasing funds to establish international and domestic private trade institutions for verification of deposit purposes." It further states that when the leased funds are verified, that "private traders are able to increase or obtain lines of credit with established institutional lenders for various business uses," including "trade credit, bridge loans, hard-money loans and high-rated bonds." This PPM further explains that private traders may also "conduct commodities and day trading activities" and that Momentum conducts business through joint ventures with partners that "have long-standing relationships with established private traders."

27. The representations in these PPMs were repeated in the promissory notes that Morris gave to investors. These promissory notes state that they are "issued under and subject in all respects to the terms of the Company's Private Placement Memorandum."

28. In these PPMs and promissory notes, Morris made material misrepresentations to investors and omitted material information regarding how he would use investor money. Rather than investing the funds in debt and equity vehicles, real estate, commodities, and leasing it to private traders, Morris used investor money to support a lavish lifestyle,

including a luxurious home and several sports cars, and to make illusory interest payments to early investors in his scheme.

29. Morris never advised investors that their funds would be used to pay Morris' personal expenses or to pay other investors purported returns.

E. **THE SCHEME UNRAVELS**

30. In or around April 2008, Morris stopped making regular interest payments to investors. Morris gave many explanations to investors, including that Homeland Security had frozen the accounts, that the Madoff case had caused banks to hold funds, and that typographical errors in wire request forms had caused delays.

31. Morris told Haley, Nguyen, and Linford to pass these explanations on to investors, and they did so even when they had concerns about Morris' truthfulness.

32. As investors complained and threatened to go to the Commission and other government agencies, Morris began disseminating phony bank statements falsely showing that he had over $200 million deposited with Wachovia Bank. In late October 2008, Morris gave Nguyen a purported "Bank Confirmation Letter" from Wachovia.

33. This fraudulent letter states that Wachovia "currently holds funds in the amount of... $201,782,567.89... [and] Mr. Raymond Paul Morris is the signatory on this account." The letter also says "the funds are good, clean and of non-criminal origin, are unencumbered and freely disposable."

34. In addition to this letter, Morris gave Nguyen a phony "Verification of Depository," also purporting to be from Wachovia Bank, showing that $201,827,067.89 was in Morris' account.

35. After Nguyen received the fraudulent "Bank Confirmation Letter" and "Verification of Depository," he agreed to draft a letter to Morris' investors, assuring them their funds were safe. Nguyen's October 30, 2008 letter states that "Mr. Morris is in possession of funds that will allow for the return of the principal amount of your investment along with any back interest in the anticipated redemption of your Promissory Note(s)."

36. This letter further confirmed that Nguyen was "in possession of a copy of an official bank letter confirming that the funds are in a specified account under Mr. Morris [sic] signatory control at such bank."

37. These assurances by Morris that he had sufficient funds to repay investors were false. The funds in the bank account were not funds Morris could use to pay back investors, and in fact "weren't his to touch."

38. By the time the scheme unraveled, Morris, Haley, Linford, Nguyen, and their respective entities, had defrauded investors out of $60 million or more by offering and selling unregistered and non-exempt promissory notes based on material misrepresentations and omissions.

39. E & R Holdings, Wise Financial and Momentum received a total of $65,061,909.44 in investor funds. The prejudgment interest calculation on $65,061,909.44, as calculated from April 1, 2007 through February 29, 2012, is $17,731,048.05.

## CONCLUSIONS OF LAW

1. Defendant violated the antifraud provisions of Sections 5(a), 5(c) 17(a) of the Securities Act of 1933 ("Securities Act") and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder.

2. Defendant made untrue statements and omitted material facts.

3. Defendant misrepresentations and omissions were material.

4. Defendant acted with scienter.

5. Defendant fraud occurred in connection with the purchase of sale of securities.

6. Defendant used the means and instrumentalities of interstate commerce in furtherance of their fraud.

7. The Commission is entitled to disgorgement in the amount of $65,061,909, representing profits gained as a result of the conduct alleged in the Complaint, together with prejudgment interest thereon in the amount of $17,731,048.05, for a total of $82,792,957.05.

8. The Commission is entitled to a civil monetary penalty against Defendant.

## I.

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Defendant and Defendant's agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Final Judgment by personal service or otherwise are permanently restrained and enjoined from violating, directly or indirectly, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 promulgated thereunder [17 C.F.R. § 240.10b-5], by using any means or instrumentality of interstate commerce, or of the

mails, or of any facility of any national securities exchange, in connection with the purchase or sale of any security:

    (a)    to employ any device, scheme, or artifice to defraud;

    (b)    to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

    (c)    to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

## II.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant and Defendant's agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Final Judgment by personal service or otherwise are permanently restrained and enjoined from violating Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)] in the offer or sale of any security by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly:

    (a)    to employ any device, scheme, or artifice to defraud;

    (b)    to obtain money or property by means of any untrue statement of a material fact or any omission of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

    (c)    to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

## III.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant and Defendant's agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Final Judgment by personal service or otherwise are permanently restrained and enjoined from violating Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. § 77e] by, directly or indirectly, in the absence of any applicable exemption:

(a) Unless a registration statement is in effect as to a security, making use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise;

(b) Unless a registration statement is in effect as to a security, carrying or causing to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale; or

(c) Making use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed with the Commission as to such security, or while the registration statement is the subject of a refusal order or stop order or (prior to the effective date of the registration statement) any public proceeding or examination under Section 8 of the Securities Act [15 U.S.C. § 77h].

## IV.

IT IS HEREBY FURTHER ORDERED, ADJUGED, AND DECREED that, Defendant and Defendant's agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Final Judgment by personal service or otherwise are permanently restrained and enjoined from violating, directly or indirectly, Section 15(a) of the Exchange Act [15 U.S.C. § 78o(a)] to use the mails or any means or instrumentality of interstate commerce, directly or indirectly, to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security unless defendant is registered in accordance with Section 15(b) of the Exchange Act [15 U.S.C. § 78o(b)].

## V.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant is liable for disgorgement of $65,061,909, representing profits gained as a result of the conduct alleged in the Complaint, together with prejudgment interest thereon in the amount of $17,731,048.05, for a total of $82,792,957.05. Defendant is jointly and severally liable for the disgorgement and prejudgment interest with defendants E & R Holdings, LLC, Wise Financial Holdings, LLC and Momentum Leasing, LLC. Defendant shall satisfy this obligation by paying $82,792,957.05 to the Securities and Exchange Commission within 14 days after entry of this Final Judgment.

Defendant may transmit payment electronically to the Commission, which will provide detailed ACH transfer/Fedwire instructions upon request. Payment may also be made directly from a bank account via Pay.gov through the SEC website at http://www.sec.gov/about/offices/ofm.htm. Defendant may also pay by certified check, bank

cashier's check, or United States postal money order payable to the Securities and Exchange Commission, which shall be delivered or mailed to

>Enterprise Services Center
>Accounts Receivable Branch
>6500 South MacArthur Boulevard
>Oklahoma City, OK 73169

and shall be accompanied by a letter identifying the case title, civil action number, and name of this Court; Raymond P. Morris as a defendant in this action; and specifying that payment is made pursuant to this Final Judgment.

Defendant shall simultaneously transmit photocopies of evidence of payment and case identifying information to the Commission's counsel in this action. By making this payment, Defendant relinquishes all legal and equitable right, title, and interest in such funds and no part of the funds shall be returned to Defendant.

The Commission shall hold the funds (collectively, the "Fund") and may propose a plan to distribute the Fund subject to the Court's approval. The Court shall retain jurisdiction over the administration of any distribution of the Fund. If the Commission staff determines that the Fund will not be distributed, the Commission shall send the funds paid pursuant to this Final Judgment to the United States Treasury.

The Commission may enforce the Court's judgment for disgorgement and prejudgment interest by moving for civil contempt (and/or through other collection procedures authorized by law) at any time after 14 days following entry of this Final Judgment. Defendant shall pay post judgment interest on any delinquent amounts pursuant to 28 U.S.C. § 1961.

## VI.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant shall pay a civil penalty in the amount of $150,000 to the Securities and Exchange Commission pursuant to

15 U.S.C. § 77t(d) and 15 U.S.C. § 78u(d)(3). Defendant shall make this payment within 14 days after entry of this Final Judgment.

Defendant may transmit payment electronically to the Commission, which will provide detailed ACH transfer/Fedwire instructions upon request. Payment may also be made directly from a bank account via Pay.gov through the SEC website at http://www.sec.gov/about/offices/ofm.htm. Defendant may also pay by certified check, bank cashier's check, or United States postal money order payable to the Securities and Exchange Commission, which shall be delivered or mailed to

>  Enterprise Services Center
>  Accounts Receivable Branch
>  6500 South MacArthur Boulevard
>  Oklahoma City, OK 73169

and shall be accompanied by a letter identifying the case title, civil action number, and name of this Court; Raymond P. Morris as a defendant in this action; and specifying that payment is made pursuant to this Final Judgment.

Defendant shall simultaneously transmit photocopies of evidence of payment and case identifying information to the Commission's counsel in this action. By making this payment, Defendant relinquishes all legal and equitable right, title, and interest in such funds and no part of the funds shall be returned to Defendant. The Commission shall send the funds paid pursuant to this Final Judgment to the United States Treasury. Defendant shall pay post-judgment interest on any delinquent amounts pursuant to 28 USC § 1961.

Dated: June 4, 2012

_____
UNITED STATES DISTRICT JUDGE